## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CANDACE C. HENSLEY and TIMOTHY HENSLEY,<br><br>     Plaintiffs,<br><br>           and<br><br>HARTFORD CASUALTY INSURANCE COMPANY A/S/O/ GEORGIA ASSISTED LIVING FEDERATION OF AMERICA,<br><br>     Plaintiff-Intervenor,<br><br>           v.<br><br>WESTIN HOTEL, a subsidiary of MARRIOTT INTERNATIONAL, INC., *et al.*,<br><br>     Defendants. | Civil Action No.<br>1:19-cv-03846-SDG |

## OPINION AND ORDER

This matter is before the Court on Defendant Merritt Hospitality, LLC's (Merritt) motion for summary judgment [ECF 109] and Defendants Westin Hotel Management, L.P. (WHM) and Marriott International, Inc.'s (Marriott) second motion for summary judgment [ECF 110]. After careful consideration of the record and for the following reasons, the motions for summary judgment are **GRANTED** [ECF 109; ECF 110]. Defendant Westin Hotel, a subsidiary of Marriott International Inc. (Westin Hotel), is **DISMISSED WITH PREJUDICE**. Plaintiffs' and Intervenor Hartford Casualty Insurance Company's (Hartford) claims are **DISMISSED WITH PREJUDICE** as to all Defendants.

## I.      Background

### A.      Facts[1]

The following facts are undisputed. On May 2, 2017, Plaintiff Candace Hensley (Mrs. Hensley) was a guest at the Westin Hotel in Indianapolis, Indiana (the Hotel).[2] Mrs. Hensley recalls that she was walking back to the Hotel when it began to rain.[3] She also remembers approaching the Hotel, attempting to open the door to the Hotel's Club Lounge, and—finding the door was locked—turning around.[4] What happened next is unclear. Mrs. Hensley alleges she "tripped over an uneven rise in the concrete after taking a couple of steps up to a doorway,"[5] but she concedes that she does not remember tripping or falling.[6]

As a result of her fall, Mrs. Hensley alleges that she "suffered life[-]altering injuries[,] including multiple face fractures, hand fractures, brain bleeds, neurological damage, cognitive impairment issues, brain damage, nerve damage,

---

[1]    As Defendants' statements of fact and positions are essentially the same, this section derives primarily from Plaintiffs' and WHM's statements of material facts and briefing. *See* ECF 110-2; ECF 117; ECF 118.

[2]    ECF 117, at 2.

[3]    ECF 110-1, at 57.

[4]    *Id.*

[5]    ECF 117, at 2.

[6]    *Id.*

and facial pain."[7] She and her husband, Plaintiff Timothy Hensley (Mr. Hensley), assert two causes of action: (1) WHM's negligence in allegedly failing to "maintain a safe environment by not clearly marking rises in pavement," and (2) loss of consortium on Mr. Hensley's behalf, due to WHM's alleged negligence.[8]

### B.    Procedural History

#### 1.    State Court Proceedings and Removal

Plaintiffs filed their initial complaint in Gwinnett County State Court on April 29, 2019, naming only Westin Hotel and WHM as defendants.[9] Plaintiffs served WHM on April 30.[10] WHM and Merritt filed an answer and special appearance on May 28, claiming that Westin Hotel is merely a trade name, not a legal entity subject to suit.[11] In addition, WHM and Merritt noted that Marriott had not been named as a defendant, and argued it would not be a proper party in any case.[12]

---

[7]    ECF 119, at 3.

[8]    ECF 1, at 69–71.

[9]    *Id.* at 15.

[10]    *Id.* at 12–13.

[11]    *Id.* at 22.

[12]    *Id.* WHM and Merritt also filed a motion to dismiss pursuant to the doctrine of *forum non conveniens* on June 18, 2019, *id.* at 31–35, which the State Court of Gwinnett County denied on July 31. *Id.* at 85.

With this information in hand, Plaintiffs amended their complaint in the state court proceeding on July 17, adding Merritt and Marriott as Defendants over two months after the applicable statute of limitations period had run.[13] Crucially, Plaintiffs did not seek leave of court before adding Merritt and Marriott. On August 13, Marriott filed an answer and special appearance in which it asserted that it was not named as a defendant in Plaintiffs' initial complaint and had not been properly added by court order as O.C.G.A. §§ 9-11-15 and 9-11-21 require.[14] On August 23, Merritt filed an answer and special appearance asserting the same.[15] Merritt filed a notice of removal on Defendants' behalf on August 26, in which Merritt again alleged that Plaintiffs added it and Marriott as new parties "without obtaining leave of Court to do so."[16]

---

[13] *Id.* at 67.

[14] *Id.* at 90.

[15] *Id.* at 148–49.

[16] ECF 1, at 3–6. From the uncontroverted facts alleged in Merritt's notice of removal, complete diversity of citizenship exists between Plaintiffs and Defendants, 28 U.S.C. § 1332(a)(1), and the amount in controversy is sufficient. *Arbough v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[Federal courts] have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). Further, all Defendants appear to have consented to removal, except Westin Hotel, which seems to be a nonentity that was never served; Plaintiffs did not contest removal. ECF 1, at 5–6; *see Clyde v. Nat'l Data Corp.*, 609 F. Supp. 216, 218 (N.D.

### 2.    Discovery, Motion to Amend, and Motions for Summary Judgment

On February 28, 2020, WHM and Marriott filed their first motion for summary judgment,[17] which the Court denied without prejudice on April 13.[18] Hartford filed a motion to intervene on December 17, 2020,[19] and the Court granted it.[20] In the intervening time, the parties consented or moved to prolong discovery, extending deadlines well into 2021.[21]

On June 22, 2021, Plaintiffs filed a motion for leave to amend their pleading, seeking to add six new defendants.[22] Notably, however, this motion did not seek leave to join Merritt or Marriott, nor did it attempt to replace Westin Hotel with an entity capable of being sued. On July 15, Plaintiffs moved for oral argument on their motion to amend,[23] which the Court granted and set for a hearing on

---

Ga. 1985) ("Removal is permissible only if all defendants named in the state action 'join' in the petition for removal.").

[17]   ECF 23.

[18]   ECF 36.

[19]   ECF 57.

[20]   ECF 58.

[21]   ECF 34; ECF 46; ECF 55; ECF 67; ECF 97.

[22]   ECF 95.

[23]   ECF 105.

November 17.[24] At the hearing, the Court denied Plaintiffs' request to amend.[25] Meanwhile, on August 13, Merritt filed a motion for summary judgment, as did WHM and Marriott.[26] Those motions are the subject of this Order.

## II. Discussion

### A. Choice of Law

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). This includes the forum state's own choice of law rules. *Ferguson v. Trans World Airlines, Inc.*, 135 F. Supp. 2d 1304, 1308 (N.D. Ga. 2000). Georgia courts generally follow the rule of *lex loci fori*, which stands for the proposition that "procedural or remedial questions are governed by the law of the forum, the state in which the action is brought." *Garland v. Advanced Med. Fund, L.P. II*, 86 F. Supp. 2d 1195, 1205–06 (N.D. Ga. 2000). Plaintiffs brought this lawsuit in Gwinnett County, Georgia, alleging torts that occurred in Indiana. Since the

---

[24]   ECF 129.

[25]   ECF 132.

[26]   ECF 109; ECF 110.

parties do not dispute the applicability of Georgia procedural law and Indiana substantive tort law,[27] the Court applies those laws to this dispute.

### B.    Summary Judgment

#### 1.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material. *Id.* A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

---

[27]    The Court reaches this conclusion, considering that WHM and Merritt argue for the application of Indiana substantive tort law, and Plaintiffs exclusively cite Indiana law for propositions regarding the substance of their tort claims.

The non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. If the evidence relied on by the non-movant is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and cannot be made by the district court. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

### 2.  WHM and Marriott Are Entitled to Summary Judgment.

While the parties dispute several details about Mrs. Hensley's fall, the decisive question for WHM and Marriott is whether either controlled the Hotel's premises.[28] Under Indiana law, "[i]n premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). Usually, the landowner controls the premises, but even "a landowner is not liable if the landowner did not control the premises and there was someone else, *e.g.*, a contractor, who controlled the premises when the accident occurred." *Rider v. McCamment*, 938 N.E.2d 262, 268 (Ind. Ct. App. 2010). In other words, "the power of control is determinative in cases of premises liability." *Great Atl. & Pac. Tea Co. v. Wilson*, 408 N.E.2d 144, 147 (Ind. Ct. App. 1980).

According to Plaintiffs, "it is entirely unclear . . . who the responsible party [was in] maintaining the safety of the premises of the hotel on May 2, 2017."[29] Plaintiffs claim the answer is obscured "due to multiple mergers, assignments, and

---

28   ECF 119, at 13.

29   ECF 118, ¶ 5.

transfers that have occurred" since Marriott acquired Starwood Hotels, the company that owned WHM prior to 2016.[30] Plaintiffs further contend that the Hotel is subject to the License Agreement, which allegedly "provides WHM and Marriott the ability to inspect the premises and specifically assert[ ] the right to enter [the Hotel] and inspect for safety."[31] WHM and Marriott respond that some of the License Agreement's provisions were designed to contract around any fiduciary or agency relationship with the Hotel's nonparty owners and operators, but those provisions—and others designed to exculpate and indemnify WHM against liability to third-parties—do not necessarily affect whether WHM is immune from a third-party lawsuit or entitled to summary judgment. *Morris v. McDonald's Corp.*, 650 N.E.2d 1219, 1222 (Ind. Ct. App. 1995) ("What neither an exculpatory nor an indemnity clause does is shield McDonalds from suit by a third party injured as a result of McDonalds' and/or GBS's negligence. While a party can ordinarily contract out his duty to exercise reasonable care with respect to another contracting party via a simple exculpatory provision, a party cannot contract out his duty to exercise reasonable care with respect to third parties.").

---

[30]  *Id.*

[31]  ECF 117, ¶¶ 3–4.

More persuasively, WHM and Marriott respond that the control question is easily resolved in their favor. WHM and Marriott do not "exercise control over the operation" of the Hotel; WHM merely licensed the Westin brand to the Hotel's owner, requiring that the owner meet certain criteria as set out in the License Agreement in order to "use the 'brand' and 'fly the flag.'"[32] So, WHM and Marriott are franchisor-licensors and the nonparty owner of the Westin-branded Hotel is a franchisee-licensee. Moreover, Marriott is WHM's parent, but is not a signatory to the License Agreement.

"'Franchisor liability' is a fairly undeveloped area of law in Indiana." *Dubois v. Kepchar*, 889 F. Supp. 1095, 1101 (N.D. Ind. 1995). Only a few cases have addressed it, and none clearly so. However, the Northern District of Indiana in *Dubois* explained that a franchisor's liability "hinges on whether the franchisor 'controls' the franchisee and does so negligently." *Id.* (citations omitted). Indiana courts look to the agreements between the franchisor-licensor and franchisee-licensee to determine whether the franchisor-licensor's control warrants liability. *Id.* at 1101–02. For liability to attach to the franchisor-licensor, the amount of control "must consist of something more than a general right to make suggestions

---

[32]   ECF 110-2, at 6.

or recommendations or to order the work stopped or resumed." *Id.* (quoting *Whitten v. Ky. Fried Chicken Corp.*, 570 N.E.2d 1353, 1356 (Ind. Ct. App. 1991)).

While Plaintiffs evince confusion regarding Marriott's corporate structure and franchise practices with respect to WHM and the Westin brand, the agreements submitted as evidence show that neither WHM nor Marriott exercised the level of control over the Hotel or its owners and operators.[33] First, Plaintiffs acknowledge that the Operating Agreement shows that nonparty Westin Indianapolis LLC was the sole owner of the hotel, and nonparty Westin Operator LLC operated and managed the hotel, not WHM or Marriott.[34] Second, regarding WHM, the License Agreement—the only agreement connecting WHM to the Hotel—shows that WHM's control began and ended with maintaining the Westin brand's integrity. It clearly spells out WHM's relationship with respect to the Hotel's operation, which is determinative:

> Licensee acknowledges that: (i) Licensee is solely responsible for determining the manner in which its rights are exercised and obligations are fulfilled, in the exercise of its business interest and day-to-day control of the Hotel, (ii) Licensee will conduct its business in its own name, using names and Licensed Marks [*i.e.*, the

---

[33] ECF 99-1, at 22 ("Licensor [WHM] acknowledges that Licensee [Westin Indianapolis LLC] has engaged Operator [Westin Operator LLC], an Affiliate of Licensor, to Operate the Hotel under the Operating Agreement . . . .").

[34] ECF 119, at 15; *see also* ECF 99-2, at 102.

> Westin brand] which are part of the System solely in order to identify the Hotel as a facility which makes use of the rights granted in this License, and (iii) Licensor has no authority to hire, fire or determine the working conditions or compensation of any of Licensee's employees.[35]

This level of control does not impute liability on WHM for the Hotel's alleged negligence in maintaining its premises under Indiana law. The court in *Dubois* explained why. In that case, it was "undisputed . . . that [the franchisor], through the franchise agreement, did control various aspects of [the franchisee's] business operations." 889 F. Supp. at 1102. However, the franchisor's control was limited to things like "dictat[ing] the physical appearance of the office" and "dictat[ing] the name [the franchisee] could do business under," as in this case; it did not extend to the franchisee's business practices. *Id.* The court called the plaintiff's claim to the contrary "a red herring[,] . . . like arguing that because McDonald's requires franchisees to erect golden arches out front, it should be held liable if a customer is sickened by improperly cooked meat." *Id.* at 1102–03. The relevant inquiry was whether the franchisor had control over the franchisee's day-to-day operations that led to the plaintiff's claim. *Id.* at 1103 (citing *Little v. Howard Johnson*, 455 N.W.2d 390 (Mich. App. 1990) (despite its control of architecture and

---

[35]   *Id.* at 54.

its requirement to maintain a clean facility, the franchisor was not liable for a slip and fall because it had no control of day-to-day operations)). Because the franchise agreement spelled out the franchisor-franchisee relationship, and the plaintiff could not offer evidence to suggest that the franchisor and franchisee did not conduct their relationship in accordance with the agreement, the court granted summary judgment to the franchisor. *Id.*

Here, Plaintiffs give significant weight to WHM's and Marriott's alleged authority to inspect the Hotel for safety, among other things.[36] Per the License Agreement, WHM could enter to inspect "the Hotel, its operations, its books and records[,] . . . and all leased and concession areas to ensure compliance . . . and [ ] performance of Licensee's other obligations under [the License] agreement."[37] Even taking for granted that WHM and Marriott performed the quality assurance inspections as Plaintiffs insist they did, the inspections dealt with customer experience and brand integrity.[38] Put differently, WHM and Marriott might have instructed the Hotel to erect the Westin sign out front, but that does not mean they can be held liable for Plaintiffs' injuries.

---

[36]   ECF 119, at 8–9, 11, 14, 16, 17, 23, 25.

[37]   *Id.* at 19.

[38]   ECF 110-1, at 6.

As a matter of Indiana law, WHM is entitled to summary judgment because Plaintiffs have not raised a disputed issue of material fact regarding WHM's level of control over the Hotel. It was entitled per the License Agreement to inspect the premises for quality assurance purposes—nothing more. Marriott was even farther removed from control over the Hotel as it was not a party to the License Agreement at all.[39] Therefore, Marriott is likewise entitled to summary judgment.

Accordingly, the Court grants WHM and Marriott's motion for summary judgment as to Mrs. Hensley's negligence claim.[40] Because Mrs. Hensley's negligence claim fails as a matter of law, Mr. Hensley's derivative loss of consortium claim must also fail. *Durham ex rel. Est. of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 764 (Ind. 2001) (citations omitted) ("The loss of consortium claim has been described as a claim derivative of the injured spouse's personal injury claim. By this we mean that if the spouse's cause of action for personal injury fails, the loss of consortium claim falls with it."). Thus, WHM and Marriott are entitled to summary judgment on that claim, too. Further, as Hartford's O.C.G.A. § 34-9-11.1

---

[39]   ECF 110-1, at 6.

[40]   ECF 110.

third-party subrogation claim depends on Plaintiffs' success, that claim is also dismissed with prejudice as to WHM and Marriott.[41]

### 3.  Merritt Is Entitled to Summary Judgment.

Merritt is the manager/operator of the Hotel and did exercise control over the premises by virtue of its position. However, it is also entitled to summary judgment on Plaintiffs' claims.

Under Indiana law, "[a] plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011) (citation omitted). Summary judgment is appropriate if "the defendant demonstrates that the undisputed facts negate at least one element of the plaintiff's claim." *Am. Legion Pioneer Post No. 340 v. Christon*, 712 N.E.2d 532, 534 (Ind. Ct. App. 1999) (citation omitted). The decisive element in this case is Merritt's duty.

Merritt owed Mrs. Hensley, an invitee, "a duty to exercise reasonable care to protect [her] from *foreseeable dangers* on the premises." *Pfenning*, 947 N.E.2d at 406 (citation omitted) (emphasis added). Indiana law provides that the "invitor is

---

41   ECF 59.

not the insurer of the invitee's safety, and before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind. Ct. App. 1995). Here, Plaintiffs have failed to establish a dispute of material fact as to whether Merritt had actual or constructive knowledge that the rise in the pavement posed a foreseeable danger. Plaintiffs concede that they were "unable to determine if [Merritt] should have known the risk of the curb," so Merritt's constructive knowledge is out of the question.[42] As for Merritt's actual knowledge, Plaintiffs offer only one piece of evidence—a complaint in a lawsuit against Merritt, which they rely upon to allege that "[o]ther guests have been injured on the same curb while trying to use the same door."[43] But the complaint is not probative of Merritt's actual knowledge because the plaintiff in that case purportedly fell on November 6, 2017, months after Mrs. Hensley's May 2, 2017 fall.[44] The later fall—true or not—could not have placed Merritt on notice of any danger prior to or during Mrs. Hensley's stay.

As a last-ditch effort, Plaintiffs note that "sometimes it's hard for the non-moving party to come forth and point to evidence to shift the burden back to the

---

[42]   ECF 123, at 23.

[43]   ECF 122, at 7; *see also* ECF 118-4.

[44]   *Compare id.* at 2 *with* ECF 117, at 2.

moving party."[45] True enough. But hard as it may be, that is exactly Plaintiffs' task at summary judgment. *Celotex Corp.*, 477 U.S. at 324. Merritt's summary judgment motion is granted as to each of Plaintiffs' claims.[46] Hartford's O.C.G.A. § 34-9-11.1 third-party subrogation claim is likewise dismissed with prejudice as to Merritt.

### C.   Plaintiffs' Defective Amended Complaint

Even if Merritt were not entitled to summary judgment, it would still be precluded from liability due to procedural defect. Merritt argues that Plaintiffs were required to obtain leave of court to join new parties to this lawsuit, so Plaintiffs' amended complaint is ineffective, and Merritt should be dismissed.[47] Marriott raises the same argument.[48] In addition, WHM and Marriott maintain that Westin Hotel is not a legal entity and should be dismissed.[49]

#### 1.   Legal Standard

Under Georgia law, a party may amend his or her "pleadings as a matter of course and without leave of court at any time before the entry of a pretrial order." O.C.G.A. § 9-11-15(a). But Georgia law also states that "[p]arties may be dropped

---

[45]   ECF 123, at 24–25.

[46]   ECF 109.

[47]   ECF 109-1, at 23–25.

[48]   ECF 110-1, at 20–21.

[49]   ECF 110-2, ¶ 18.

or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *Id.* § 9-11-21. While O.C.G.A. § 9-11-21 appears permissive, "Georgia courts have held on numerous occasions that O.C.G.A. § 9-11-15(a) must be read *in pari materia* with O.C.G.A. § 9-11-21." *Goolsby v. Farmers Ins.*, No. 1:20-CV-4240-MLB, 2021 WL 2661547, at *1 (N.D. Ga. June 29, 2021) (*Wright v. Safari Club Int'l, Inc.*, 322 Ga. App. 486, 493–94 (2013)).

> OCGA § 9-11-21 parallels Rule 21 of the Federal Rules of Civil Procedure, and the Federal courts have long construed it to require the obtaining of leave of court when the plaintiff seeks to assert a claim against one who is not already a party to the proceedings. The adding or dropping of parties requires the exercise of a discretion by the court, and, without the requirement that leave of court be obtained in doing so, there could be no exercise of discretion. It is important that the status of parties not be altered or changed save under the supervision of the court. Obtaining leave of court is a requisite.

*Wright*, 322 Ga. App. at 494 (quoting *Dollar Concrete Constr. Co v. Watson*, 207 Ga. App. 452, 453 (1993)). In other words, Georgia law requires a court order to add or drop parties. *Id.* at 493–94 (collecting cases). Notably, removal to federal court cannot cure such a defect: "[A]n amendment to a complaint adding a new party without first obtaining leave of the court is without effect," even if the amended complaint has been removed to federal court. *Scott v. Atlanta Indep. Sch. Sys.*, No.

114-CV-01949-TWT-WEJ, 2014 WL 12621232, at *3 (N.D. Ga. Aug. 15, 2014) (citation omitted) (collecting cases).

### 2.   Analysis

### i.   Merritt and Marriott

Plaintiffs make three arguments that their amended complaint properly added Merritt and Marriott to this lawsuit. Each argument fails.

First, Plaintiffs assert that their amendment was a mere "correction of misnomer," and, therefore, they were not required to seek leave of court to add Merritt and Marriott.[50]

> *Where the real defendant was properly served or acknowledged service*, an amendment to correct a misnomer to set forth the correct identity of this defendant is not a change of parties requiring a court order, but a correction of a misnomer, even if the statute of limitation has run. . . . The correction of a misnomer applies only when there is no change of parties and *does not add a new and distinct party, which had not been previously served in the case.*

*Nat'l Off. Partners, L.P. v. Stanley*, 293 Ga. App. 332, 333–34 (2008) (emphasis added) (citation omitted). Here, the state court record, including Plaintiffs' Service of Process Transmittal, demonstrates that Plaintiffs served their first complaint only on WHM—not Westin Hotel, Merritt, or Marriott.[51] Thus, Plaintiffs were required

---

[50]   ECF 1, at 4.

[51]   *Id.* at 12–13.

to seek leave of court to join Merritt and Marriott as parties, just as they sought leave on June 22, 2021 to add several other new defendants.[52]

Plaintiffs' authorities clarify why their first argument fails. For example, they quote a Westlaw headnote in *London Iron & Metal Co. v. Logan*: "Erroneous name of defendant may be amended to correct same even after the statute of limitations has run."[53] 133 Ga. App. 692 (1975). But in actuality, *Logan* is inapposite. There the Court of Appeals of Georgia allowed a correction of a misnomer only because the plaintiff had served the proper defendant, but merely forgot its corporate suffix, "Inc." *Id.* at 695 ("The effect of the plaintiff's amendment to add the suffix did not result in any change of party defendant.").

Plaintiffs' amendment here involves much more than a missing suffix or inadvertent typographical error. That much is self-evident, given that WHM and Westin Hotel remained named Defendants *in addition to* Merritt and Marriott in Plaintiffs' amended complaint. Therefore, Plaintiffs were required to seek leave of court—whether in state court or federal court—to add Merritt and Marriott.

Plaintiffs confusingly argue that Merritt and Marriott "did not raise any objections [or] defenses as to the misnomer" in their answers and special

---

52   ECF 95.

53   ECF 123, at 4.

appearances.[54] However, these Defendants had no reason to object specifically to any misnomer where there was none as to them. Moreover, Marriott's answer and special appearance noted that "Marriott was not named as a defendant in the original Complaint filed on April 29, 2019, and . . . has not been added as a party to this action by court order granting leave to do so required by O.C.G.A. §§ 9-11-15 and 9-11-21."[55] Merritt's answer and special appearance did the same.[56] So did Merritt's notice of removal.[57] Yet Plaintiffs did not seek leave of Court to amend and correct this error with respect to Merritt and Marriott, even belatedly, after notice of their procedural objections.

Second, Plaintiffs insist that the Fifth Circuit's "liberal construction" of Fed. R. Civ. P. 4(h) makes clear that, where a party was served and "provides no evidence that it suffered harm or is prejudiced by the amendment" to the complaint, the amendment should take effect.[58] Rule 4(h) stands for no such proposition. While it details the proper procedure for serving a corporation in a federal lawsuit, it has nothing to do with the Georgia procedural rule of which

---

[54]   ECF 123, at 2.

[55]   ECF 1, at 90–91.

[56]   ECF 1, at 149.

[57]   *Id.* at 2–3.

[58]   ECF 123, at 4.

Plaintiffs ran afoul. Notably, Plaintiffs cite no authority to the Court for the proposition that the mandate under O.C.G.A. § 9-11-21 of obtaining a court order prior to amending a pleading to add a defendant should be liberally construed.

Third, Plaintiffs argue that they had 120 days to amend their complaint under Georgia Uniform Superior Court Rule 44.7 to add Merritt and Marriott.[59] Rule 44.7 pertains only to petitions for habeas corpus, so it is of no moment here.

Thus, even if Merritt and Marriott had not prevailed on summary judgment, they could have been dismissed from this action because Plaintiffs failed to obtain leave of court to join them as defendants in the first place.

### ii.    Westin Hotel

WHM and Marriott argue that "Westin Hotel" should be dismissed. They insist

> "Westin Hotel, a subsidiary of Marriott International, Inc." is not a legal entity and does not exist nor did it on May 2, 2017. "Westin Hotel" is not a subsidiary of Marriott. "Westin Hotel" is a trade name or brand, one of thirty-one Marriott "brands."[60]

Plaintiffs dispute WHM and Marriott's contention, arguing, "Westin [Hotel] is enough of a legal entity to enter into contracts to be in control of a hotel[, and]

---

[59]    *Id.* at 2–3.

[60]    ECF 110-2, ¶¶ 18–20 (citations omitted); *see also* ECF 110-1, at 8.

that should be enough to make it to a jury."[61] But the uncontroverted evidence demonstrates Westin Hotel is a Marriott brand or trade name, not a distinct legal entity. Thus, Plaintiffs' amended complaint is also ineffective as to Westin Hotel, and the Court dismisses Westin Hotel from this case.

## III.    Conclusion

The motions for summary judgment are **GRANTED** [ECF 109; ECF 110]. Westin Hotel is **DISMISSED WITH PREJUDICE**. Plaintiffs' and Intervenor Hartford Casualty Insurance Company's (Hartford) claims are **DISMISSED WITH PREJUDICE** as to all Defendants. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 30th day of March, 2022.

_____
Steven D. Grimberg
United States District Court Judge

---

[61]    ECF 119, at 22.